UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD MICHAEL KING,<br><br>Petitioner,<br><br>v.<br><br>CHRISTIAN PFEIFFER,<br><br>Respondent. | No. 2:15-cv-2174 DB P<br><br><br><br>ORDER |

Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his conviction imposed by the Sacramento County Superior Court in 2008 for rape in concert and sexual battery. Petitioner alleges the testimony of a sexual-assault nurse violated his due process rights and his trial counsel was ineffective for failing to object to that testimony. In addition, petitioner argues that a jury instruction on false or misleading statements was constitutionally erroneous. Both parties have consented to the jurisdiction of a magistrate judge in this case. (See ECF Nos. 4, 43, 45.) For the reasons set forth below, this court will deny the petition. See 28 U.S.C. § 636(c)(1).

////

////

////

# BACKGROUND

## I. Facts Established at Trial

The California Court of Appeal for the Third Appellate District provided the following factual summary:

> S. was 22 years old, "mild[ly] mental[ly] retard[ed]," and pregnant when she was raped in January 2006. That day, S. had gone with her friend Shenel Simmons to the apartment of Simmons's boyfriend. Simmons's boyfriend was defendant's brother, and the brothers shared an apartment. While Simmons went to the apartment, S. waited in Simmons's still-running car. Before Simmons returned to her car, defendant got inside and began driving (without Simmons's permission) around Sacramento with S.
>
> Defendant drove to Poon's house. Poon came out of the house, and defendant told S. to get in the backseat of the car because they were all going to the store. When she did, Poon joined her. Defendant drove a short distance from the house. Poon started "feeling [her] all over," and she started crying and told him, "no." Defendant, who was in the driver's seat, told her, "shut up, B [itch]." Poon "kept on pushing his weight on [her]." "He kept on feeling on [her], and [she] kept on pushing him away." Eventually, she "just gave up" because she "couldn't fight no more." Poon then pulled her pants down and started having sex with her. She was still crying and saying "no." While Poon was raping S., defendant was "[s]itting in the front laughing." Defendant then dropped Poon back at his house, and Poon gave defendant $10 and told him, "Make sure [S.] don't holler rape."
>
> Defendant drove S. back to the apartment. Simmons was there when S. returned, and she thought S. looked upset and uncomfortable. S. told Simmons she was ready to go, and once they were alone, S. told Simmons what had happened. S. called her family, and police were summoned.
>
> S. went to the hospital and to the University of California at Davis Medical Center. At the medical center, nurse practitioner Penny Miller conducted a sexual assault exam. S. told the nurse one of the assailants held her down with the weight of his chest, fondled and kissed her, and then put his penis in her vagina. Although S. told the nurse she had "vaginal discomfort," the nurse did not find any injuries on S.'s genitals. The nurse explained that in a third of patients, there was no finding of any physical injury, even though a sexual assault occurred. The nurse could not tell from her examination of S. if the sex was consensual. But, her examination of S. was "consistent with the history of sexual assault" S. had recounted to her.

////

////

////

2

> At trial, defendant testified he had read up on the subject of pimping and had approached S. about "ho-ing" for him. She eventually accepted his offer. S. voluntarily had sex with Poon. It was a "spur of the moment thing" that turned out to be a source of money for defendant.

People v. King, No. C065908, 2011 WL 5842075, at **1-2 (Cal. Ct. App. Nov. 21, 2011).

## II.     Procedural Background

In March 2008, a jury found petitioner and Poon guilty of rape in concert and sexual battery. The court sentenced petitioner to 32 years in prison. On appeal, petitioner raised a number of issues, including an issue regarding his presentence custody credits. (ECF No. 56-6.[1]) The Court of Appeal modified the judgment to reflect the appropriate custody credits and rejected petitioner's remaining claims. 2011 WL 5842075, at *5.

Petitioner filed a petition for review with the California Supreme Court. (ECF No. 56-10.) On February 15, 2012, that court denied his petition without comment. (ECF No. 56-11.) Petitioner did not file a petition for certiorari with the United States Supreme Court or pursue state habeas relief.

On October 6, 2015, petitioner filed a pro se petition for a writ of habeas corpus in this court. (ECF No. 1.) He filed a first amended petition on May 2, 2016. (ECF No. 10.) On July 31, 2017, this court granted petitioner's motion for the appointment of counsel. (ECF No. 23.) Petitioner, through counsel, filed a second amended petition on March 26, 2018. (ECF No. 38.) Respondent filed an answer (ECF No. 49) and petitioner filed a traverse (ECF No. 61).

### STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

---

[1] Respondent lodged electronic copies of the state court record in this case. (See ECF No. 50.) The court cites to the electronic filing numbers, and, where necessary, the electronic filing pagination.

3

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient, and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

5

finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**ANALYSIS**

Petitioner first raises the issue of equitable tolling the statute of limitations. Recognizing that he filed his petition over two years after the expiration of the one-year statute, petitioner argues that his mental health and problems with medications entitle him to equitable tolling. Petitioner then raises three claims for relief: (1) a prosecution witness improperly vouched for the victim's credibility; (2) his attorney was constitutionally ineffective when he failed to object to the witness's testimony; and (3) a jury instruction on false or misleading statements violated due process.

**I.      Statute of Limitations/Equitable Tolling**

In the answer, respondent does not address the equitable tolling issue. Rather, respondent states that while he "affirmatively alleges that the current petition is untimely," he addresses only the merits of petitioner's claims because "the timeliness issue appears to be potentially complicated and time-consuming." (ECF No. 49 at 6.) In an apparent attempt to avoid waiving the statute of limitations defense, respondent contends the court may forgo the statute of limitations issue and address the merits. Respondent has little support for avoiding waiver. He cites two cases.

In the first case cited by respondent, Pough v. United States, 442 F.3d 959, 965 (6th Cir. 2006), over the government's objections, the district court construed the petitioner's motion for an extension of the limitations period as a petition for purposes of the habeas statute of limitations. The district court then denied petitioner relief on the merits. Petitioner appealed. On appeal, in addition to addressing the merits, the government argued that the district court's

1 decision on the statute of limitations was incorrect. The Court of Appeal declined to consider the
2 limitations issues because the "one-year statute of limitations for filing a motion under § 2255 is
3 not jurisdictional." 442 F.3d at 965. The court then went ahead to consider the merits issues.

In Pough, the government litigated the limitations issue in the lower court and again on appeal. That is not the case here. The court in Pough was not confronted with the issue raised by the answer in this case – did respondent waive assertion of a statute of limitations defense?

In the second case cited by respondent, the Ninth Circuit noted that where procedural default issues are complex, a court may choose to bypass those issues and address the merits if the petitioner's claims are "clearly not meritorious." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002). However, in making that statement, the Court of Appeals was not considering the issue of the respondent's waiver. Rather, the court simply noted that a federal appellate court could choose to address the merits rather than a more complex procedural default issue.

The court finds respondent's mention of timeliness without argument on the issue to be similar to the respondent's position in Wood v. Milyard, 566 U.S. 463, 465-66 (2012). There, the respondent stated that he was "not conceding" the timeliness issue, but would not challenge the petition on that basis. Id. at 465. The Supreme Court found the respondent's position to be a "deliberate waiver of the limitations defense." Id. at 466. Therefore, the Court found the lower court in Wood abused its discretion when it ruled on the limitations issue.

The statute of limitations is an affirmative defense. Woods teaches that where respondent recognizes it, but chooses not to pursue it, the court should consider that respondent has chosen to waive this defense. In the present case, respondent provides no argument on the statute of limitations issue. He fails to give the court any basis upon which to rule on that issue and, therefore, as in Woods, respondent has waived it. This court addresses the merits of petitioner's claims below.

**II.     Admission of Nurse Miller's Testimony**

Petitioner challenges the admission of Miller's testimony that the lack of physical injury to the victim did not mean the sex was consensual and that it was "consistent" with the victim's

////

8

story of being assaulted. Petitioner further alleges his trial attorney was ineffective for failing to object to Miller's testimony.

**A. Decision of the State Court**

The California Court of Appeal considered this issue and held as follows:

*There Was No Error In Admitting The Nurse's Testimony*

> Defendant contends he was denied his federal and state due process right to present a defense by the nurse's testimony, which he claims did "no more than vouch for the strength of the prosecution's case and the veracity of [S.]'s allegations." He singles out her opinion testimony that her examination of S. was "consistent with the history of sexual assault." He claims his counsel was deficient for failing to object.
>
> We begin by putting defendant's argument in context.
>
> On direct examination, the nurse testified she did not find any injuries on S.'s genitals. In the nurse's experience, in a third of patients, there was no finding of any physical injury, but "[the patients] still experience the sexual assault." She explained as follows: "the vagina is an organ that's designed to have a penis inserted in it. It naturally, physiologically is designed to be elastic. [¶] Even if a woman's not consenting to the activity, your body is your body, and there[ ] still may[ ]be some lubrication that occurs. [¶] So the absence of injury doesn't mean that nothing occurred."
>
> The complained-of testimony came during cross-examination:
>
> DEFENSE COUNSEL: "Can you tell from your examination whether or not the sex was consensual?"
>
> NURSE MILLER: "No. [¶] I can—[¶] Simply *it's consistent with the history of sexual assault.*" (Italics added.)
>
> DEFENSE COUNSEL: "Okay. But if the sexual contact was consensual, would that be consistent with these findings?"
>
> NURSE MILLER: "It could be, but that's not the history I was given."
>
> DEFENSE COUNSEL: "I know. [¶] But I asked you if it-if that was the history you were given, would it be consistent with these findings?"
>
> NURSE MILLER: "It could be. [¶] We're not sure really what happens in consensual sex. We don't. There's not data."
>
> This testimony did not vouch for the strength of the prosecution's case or the veracity of S.'s allegations. Rather, this testimony explained the nurse could not tell if the sex here was consensual, but the nurse's finding of no injury still was consistent with what S. told

9

> the nurse had happened. This evidence was relevant expert testimony. It was relevant because it had a "tendency in reason" to prove a disputed fact, namely, whether the sex was consensual. (Evid.Code, § 210.) It was the proper subject of expert testimony because it would be beyond common experience why a woman who claimed to be raped might have no injuries on her vagina and why that lack of injury could still be consistent with the woman's statement she had been raped. (*See People v. Chapple* (2006) 138 Cal.App.4th 540, 547 [the purpose of expert testimony is to provide an opinion beyond common experience].)
>
> Further, contrary to defendant's claims, there is no case that limits a medical expert from testifying that a lack of physical injury is consistent with a history of rape. Rather, the cases to which defendant points establish that rape trauma syndrome can be used to rebut misconceptions about the presumed behavior of a rape victim but cannot be used to show the rape occurred in a specific case. (*See, e.g.*, *People v. Bledsoe* (1984) 36 Cal.3d 236, 247–248; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1301.)
>
> Here, the expert testimony was not an opinion on defendant's guilt; rather, as we have explained, it was relevant evidence and the proper subject of expert testimony. Given that the nurse's testimony was relevant and a proper subject of expert testimony, there was no violation of defendant's constitutional rights in its admission, and trial counsel was not deficient for failing to object. (*People v. Falsetta* (1999) 21 Cal.4th 903, 913["[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair]"; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693] [the first prong of an ineffective assistance of counsel claim is deficient performance].)

2011 WL 5842075, at \*\*2-3.

### B. Analysis

#### 1. Legal Standards

Petitioner's claim may be considered in two ways. First, to the extent he is alleging admission of this evidence violated his due process rights, it is likely he does not state a federal constitutional claim. Second, to the extent petitioner is contending the admission of this evidence was due to prosecutorial misconduct, to succeed he must meet the high bar created by the due process standard.

##### a. Admission of Evidence

It is well established that "federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Wilson, 562

U.S. at 5; Pulley v. Harris, 465 U.S. 37, 41 (1984). Thus, whether a petitioner's "due process rights were violated by the admission of evidence . . . . is [usually] no part of a federal court's habeas review of a state conviction." Id.; see also Rhoades v. Henry, 638 F.3d 1027, 1034 n.5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief.").

Nonetheless, the erroneous admission of evidence at trial may violate due process if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); accord Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008). However, "[t]he Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Indeed, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. (citation omitted); see also Munoz v. Gonzales, 596 F. App'x 588 (9th Cir. 2015) (same; citing Holley, 568 F.3d at 1101).

### b. Prosecutorial Misconduct

Vouching occurs when the prosecution places the prestige of the government behind a witness through personal assurances of the witness's veracity. See United States v. Weatherspoon, 410 F.3d 1142, 1147 (9th Cir. 2005); United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). It may also take the form of witness testimony that bolsters the credibility of a witness. In particular, an expert may not testify in a manner that buttresses the credibility of a witness. United States v. Rivera, 43 F.3d 1291, 1295 (9th Cir. 1995) (quoting United States v. Brodie, 858 F.2d 492, 496 (9th Cir. 1988), overruled on other grounds in United States v. Morales, 108 F.3d 1031 (9th Cir. 1997)). The Ninth Circuit has explained the rule as follows: "'[an] expert witness is not permitted to testify specifically to a witness's credibility or to testify in such a manner as to improperly buttress a witness's credibility.'" Id. (quoting United States v. Candoli, 870 F.2d 496, 506 (9th Cir. 1989)). Vouching is "especially problematic in cases where the credibility of the witnesses is crucial." United States v. Molina, 934 F.2d 1440, 1445 (9th Cir. 1991).

The issue of prosecutorial vouching, or expert testimony that bolsters witness credibility, was considered by the Ninth Circuit in the cited cases above in light of Federal Rules of Evidence. There is no indication federal courts have considered these specific issues as a matter of constitutional error. Cf. United States v. Valle-Valdez, 554 F.2d 911, 915-16 (9th Cir. 1977) ("Errors in such matters as jury instructions, rulings on the admissibility of evidence where Fourth Amendment claims are not involved, and comments by counsel generally have been considered "nonconstitutional."). Where there is no specific constitutional prohibition on vouching, and when prosecutorial misconduct does not violate a specific constitutional guarantee, it warrants federal habeas relief only if the conduct complained of rises to the level of a due process violation. Darden v. Wainwright, 477 U.S. 168 (1986); Greer v. Miller, 483 U.S. 756 (1987).[2]

The standard for a due process violation is whether the conduct complained of "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974)) (internal citations and quotation marks omitted). "[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). In determining whether the vouching or bolstering was so egregious as to warrant habeas relief, a court should consider review the trial record and consider, among other things, the following factors:

> the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.

////

---

[2] Some courts have simply held that claims that expert testimony improperly bolstered witness credibility are not cognizable on federal habeas review. Diaz v. Greiner, 110 F.Supp.2d 225, 234 (S.D. N.Y. 2000); see also Van Cleave v. White, No. 2:07-CV-11899, 2009 WL 6047143, at *6 (E.D. Mich. Dec. 7, 2009) (citing Diaz).

United States v. Combs, 379 F.3d 564, 575 (9th Cir. 2004) (quoting Necoechea, 986 F.2d at 1278).

### c. Was the State Court's Decision Contrary to or an Unreasonable Application of Clearly Established Federal Law?

Initially, petitioner argues that the state appellate court failed to apply the federal due process standard. However, this court's reading of the state court opinion is to the contrary. In its conclusion, the Court of Appeal held that because "the nurse's testimony was relevant and a proper subject of expert testimony, there was no violation of defendant's constitutional rights in its admission." 2011 WL 5842075, at *3. The court then cited People v. Falsetta, in which the California Supreme Court held that "[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." 21 Cal. 4th 903, 913 (1999). The California Supreme Court in Falsetta relied on federal due process standards set out in Estelle v. McGuire, 502 U.S. 62, 70 (1991) and Spencer v. Texas, 385 U.S. 554, 562-564 (1967). While its conclusion is summary, the state Court of Appeal in the present case recognized the appropriate federal due process standard.[3]

Where a state court has rejected such a prosecutorial misconduct claim on the merits, federal habeas relief may be granted only if the state court's application of the Darden standard was objectively unreasonable. See Parker v. Matthews, 567 U.S. 37, 47 (2012). Since Darden established "a very general [standard]," the range of possible reasonable applications of that standard is substantial, and thus significant deference is given to state court adjudications of such prosecutorial misconduct claims. Id. at 47-49; see also Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) (in assessing whether state court's adjudication of claim involved unreasonable application of clearly established law, court must consider legal rule's specificity; the more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations).

////

---

[3] Even if the Court of Appeal did not apply the correct standard, this court finds, for the reasons set out below, that if it conducted de novo review of petitioner's claim, the claim would fail.

13

Petitioner argues that the expert's testimony was irrelevant and beyond the scope of proper expert testimony. He contends it was prejudicial because the case boiled down to a he said/she said credibility determination. However, petitioner makes only conclusory statements that the testimony was not relevant. He cites no case law supporting these contentions.

This court finds no error in the state court's determination that Miller's testimony regarding the sexual assault exam and its findings, including the testimony that the lack of injury to the genital area was not inconsistent with nonconsensual sex, was relevant and helpful expert testimony. A lay person would not necessarily understand the likelihood that a sexual assault victim would not have physical injury to her genital area. Miller's testimony that 30% of adult sexual assault victims do not have genital injury was relevant to the jury's consideration of the evidence resulting from the sexual assault exam.

To the extent Miller's testimony that the lack of injury to the genital area was "consistent" with the victim's story of sexual assault was improper bolstering, it did not rise to the level a due process violation. The testimony was limited and the defense attorney's questions to Miller made clear the obvious – that a lack of injury could also be consistent with consensual intercourse. This court does not accept petitioner's interpretation of Miller's testimony, which would have required the jury to somehow equate a lack of injury with sexual assault. Further, the defense attorney's questions also made clear that Miller was testifying that the exam was consistent with the story provided by the victim. The court does not find Miller's testimony to have somehow supported the veracity of the victim's story. Rather, the jury would have understood that Miller's finding of no genital injury did not necessarily mean the victim had not been sexually assaulted.

This case is a far cry from the polygraph case cited by petitioner. In United States v. Scheffer, 523 U.S. 303 (1998), the Court considered a military defendant's attempt to introduce evidence that he had passed a polygraph test when asked whether he had used drugs since joining the military. Among other holdings, the Court recognized that "[b]y its very nature, polygraph evidence may diminish the jury's role in making credibility determinations." 523 U.S. at 313. A polygraph has an "aura of infallibility" that is not present in a jury's consideration of witness testimony, which is subject to cross-examination.

Petitioner further argues that the prosecutor exacerbated the prejudice from Miller's testimony by "pound[ing] on" it in her closing argument. To the contrary, the prosecutor did not focus on Miller's testimony in her closing. She raised the issue and concluded that there was "no medical expectation of injury in rape," in just two pages of the over 50 pages of her initial closing argument. (See ECF No. 56 at 84-86.) And, unsurprisingly, the defense used Miller's testimony that there was no physical injury to its advantage in closing by arguing that even though the victim testified that she had a ten-minute struggle with defendant Poon, she showed no injuries. (Id. at 212.) The prosecutor did not mention the issue again in her rebuttal argument. (Id. at 243-62.)

Admission of this evidence did not deprive petitioner of a fundamentally fair trial. Petitioner was not deprived of a defense, deprived of his right of confrontation, or subjected to unfair surprise by admission of this evidence. On the contrary, petitioner was able through cross-examination and argument to challenge it. Even if Miller's testimony was error, this court finds it was not so prejudicial as to amount to a violation of petitioner's due process rights. Petitioner's claim challenging Miller's testimony will be denied.

**III.   Ineffective Assistance of Counsel for Failing to Object to Miller's Testimony**

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation marks omitted). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. .

. . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954).

Here, petitioner fails to establish prejudice from his counsel's failure to object to either Miller's testimony or the government's argument. First, to the extent petitioner argues Miller's testimony and the government's argument would have been stricken under state law if his attorney had objected, the Court of Appeal's decision shows that that argument has no state law support. And, as set out above, this court finds Miller's testimony, even if erroneous, was not significantly prejudicial, if at all, under federal law. The jury would have understood that a lack of physical injury would also be consistent with consensual sex. This court finds no reasonable probability the result of petitioner's trial would have been different if Miller's testimony or the government's argument had been stricken and/or the jury had been advised to ignore it. Petitioner's ineffective assistance of counsel claim will be denied.

## IV. Erroneous Jury Instruction

Petitioner next argues that the court's issuance of a jury instruction, CALCRIM No. 362, regarding the consideration of false or misleading statements violated his due process rights. He contends this error was compounded by the prosecutor's focus on application of the instruction to petitioner's testimony, not just to petitioner's pre-trial statements.

### A. Decision of the State Court

*The Court's Instruction Relating To Defendant's "Statements" Was Not Constitutional Error*

Defendant contends the trial court violated his federal constitutional right to testify on his own behalf and his right to present a defense by failing to instruct the jury that while false or misleading "statements" by a defendant may show consciousness of guilt, those statements were limited to pretrial statements (as opposed to trial testimony).

The complained-of instruction was the then-current version of CALCRIM No. 362 which read here as follows:

////

"If defendant Leonard Michael King or defendant Cornelius Lawrence Poon made a false or misleading statement relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. You may not consider the statement in deciding any other defendant's guilt. [¶] If you conclude that the defendant made the statement, it us up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

As pointed out in *People v. Beyah* (2009) 170 Cal.App.4th 1241, 1248–1249, this version of CALCRIM No. 362, permitted the jury to infer a defendant's consciousness of guilt based on false statements made during trial as well as those made before trial. In August 2009, the CALCRIM committee revised the first paragraph of former CALCRIM No. 362 to read: "If [the] defendant ... made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show (he/she) was aware of (his/her) guilt of the crime and you may consider it in determining (his/her) guilt." (CALCRIM No. 362 (Fall 2009 ed.).) Defendant's trial took place before this revision.

*Beyah* rejected the defendant's challenge to former CALCRIM No. 362 as follows: "CALCRIM No. 362 did nothing more than state this principle, i.e., that if the jury concluded that defendant intentionally gave false or misleading testimony, it may infer that defendant is aware of his guilt and may consider that inference—along with other evidence—in determining defendant's guilt. And although it might be said that the instruction singles out a defendant's testimony as subject to heightened scrutiny compared to other witnesses, that is true only because the principle involved is uniquely applicable to the defendant. That is not, however, a legitimate ground for concluding that the instruction unconstitutionally burdened defendant's choice to testify or resulted in any improper inference of guilt based on the jury's evaluation of his testimony." (*People v. Beyah*, *supra*, 170 Cal.App.4th at p. 1250, fn. omitted.) *Beyah* characterized its holding both as rejecting the defendant's challenge to the instruction and as a finding of lack of prejudice to the defendant. (*Id.* at pp. 1249, 1251.)

*Beyah* persuasively demonstrates there was no constitutional error here. The language used in former CALCRIM No. 362 was permissive, not mandatory, and allowed the jury to compare defendant's testimony with other evidence to determine whether any of his statements were "false or deliberately misleading, and if so, what weight should be given to that evidence." (*People v. McGowan* (2008) 160 Cal.App.4th 1099, 1104.) The jury could properly infer defendant was aware of his guilt and could consider that inference along with other evidence to reach a verdict. (*People v. Showers* (1968) 68 Cal.2d 639, 643 [jury may properly infer consciousness of guilt from defendant's false trial testimony regarding incriminating circumstances].) The instruction did not pinpoint specific statements made by defendant. Furthermore, the instruction explicitly stated that defendant's making a false or misleading statement could not prove guilt by itself. We presume the jury understood and followed the instruction given. (*People v.. Yeoman* (2003) 31 Cal.4th 93, 139.) In

sum, there was no constitutional error in this instruction.

2011 WL 5842075, at **3-4.

**B. Analysis**

**1. Legal Standards**

To obtain relief on federal habeas corpus review based on instructional error, a petitioner must show that the error "'so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Middleton v. McNeil, 541 U.S. 433, 437 (2004); Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992). The standard for determining whether a petitioner is entitled to relief is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Fry v. Pliler, 551 U.S. 112, 121–22 (2007) (on federal habeas review, the Brecht standard applies whether or not the state court has applied harmless error analysis under Chapman v. California, 386 U.S. 18 (1967)).

**2. Was the State Court Opinion Contrary to or an Unreasonable Application of Clearly Established Federal Law?**

Petitioner's argument focuses on two things. First, he demonstrates that other versions of the instruction at issue included language that the instruction applied only to pre-trial statements. He does not, however, present any case law in which the version of the instruction given at his trial was found to violate a defendant's due process rights. Rather, he shows that state courts felt the instruction was probably not intended to apply to trial testimony. In any event, state law arguments are unavailing on federal habeas.

Petitioner also argues the instruction violates a handful of constitutional rights, including the right to present a defense, the right of a defendant to testify, and the right to be convicted only upon proof beyond a reasonable doubt. Petitioner does not, however, explain why the instruction violates those rights. Nor does he present any legal support for these arguments.

Petitioner provides the court with no clearly established Supreme Court law prohibiting a trial court from instructing a jury that it may infer consciousness of guilt from a defendant's trial

testimony. In fact, federal appeals courts have held that similar instructions are not per se unconstitutional. In United States v. Mullins, the Tenth Circuit considered a defendant's objection to an instruction which read, in pertinent part: "'if you find that a witness has knowingly given false testimony during this trial denying incriminating facts, an inference that you are permitted to draw is that the false testimony signifies a consciousness of guilt.'" 4 F.3d 898, 899 (10th Cir.1993). The court first noted that the defendant admitted "that the jury might have properly inferred a consciousness of guilt if it found that he had knowingly given false testimony." Id. The court then considered the instructions as a whole and found that because the jurors were also instructed that they were the "sole judges" of witness credibility, jurors were not misled by the challenged instruction. Id. at 900.

In United States v. Perkins, the Ninth Circuit also upheld the following similar instruction:

> Conduct of a defendant, including statements knowingly made and acts knowingly done upon being informed that a crime has been committed, or upon being confronted with a criminal charge, may be considered by the jury in the light of all other evidence in the case in determining guilt or innocence.
>
> When a defendant voluntarily and intentionally offers an explanation or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt.
>
> Ordinarily it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.

937 F.2d 1397, 1401-02 & n. 2 (9th Cir. 1991).

Even assuming the instruction amounted to constitutional error, and petitioner has not made that showing, petitioner fails to establish the use of the instruction so infected the trial with unfairness that he was denied due process. If the jury applied the instruction to its consideration of petitioner's testimony, it would simply have had the opportunity to consider that any testimony it considered false could, but did not have to, evidence awareness of guilt. As noted in Mullins, this point was something jurors likely would have appropriately considered. It would not have

been unreasonable for them to feel that if petitioner was untruthful during his testimony, it might show he had awareness of his guilt. Further, as in <u>Mullins</u>, the jury was given an instruction that it was the sole arbiter of witness credibility. (<u>See</u> ECF No. 56-3 at 269.) Petitioner's claim of instructional error will be denied.

### V. Certificate of Appealability

The federal rules require a district court that issues an order denying a habeas petition to either grant or deny a certificate of appealability. <u>See</u> Rules Governing § 2254 Cases, Rule 11(a).

A judge will grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the certificate must indicate which issues satisfy this standard. 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

As discussed above, this court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Moreover, petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack</u>, 529 U.S. at 484. Therefore, the court declines to issue a certificate of appealability.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. Petitioner's second amended petition for a writ of habeas corpus (ECF No. 38) is denied;
2. The court declines to issue a certificate of appealability; and
3. The Clerk of the Court is directed to enter judgment for respondent and close the case.

Dated: May 28, 2019

DLB:9
DB/prisoner-habeas/king2174.final or

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

20